IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **Lori Morgan, Individually, and on behalf of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>*Plaintiffs,*<br><br>v.<br><br>**Chef Blythe's Southern Bistro, Inc. and Willard Bridges**<br><br>*Defendants.* | Civil No. 3:18-cv-2818 |

# COLLECTIVE ACTION COMPLAINT

Lori Morgan ("Plaintiff") on behalf of herself and all others similarly situated ("Class Members") (Plaintiff and Class Members are collectively referred to as "Plaintiffs") brings this complaint under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA") against Chef Blythe's Southern Bistro, Inc. ("CBSB") and Willard Bridges ("Bridges") (CBSB and Bridges are collectively referred to as "Defendants") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended.

## I.   NATURE OF SUIT

1. In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a

1

minimum standard of living. The purpose of the FLSA is to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).

2. Section 206 of the FLSA requires employers to compensate employees at a rate of not less than the minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a). However, for tipped employees, employers may, under certain circumstances, take a "tip credit" against payment of the full minimum wage in an amount up to $5.12 per hour, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relived of the obligation of paying the full minimum wage and are able to pay employees as little as $2.13 per hour plus tips.

3. However, an employer is *not* permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it fails to allow its tipped employees to retain all the tips they receive; (3) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employees' tipped occupation (i.e., "dual jobs"); and (4) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek.

*See, e.g.,* 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Driver v. Apple Illinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time").

4. "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) you may obtain a credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

5. If the employer fails to adhere to the FLSA's very specific requirements, it loses its right avail itself of the tip credit. *See Martin v. Tango's Rest., Inc.*, 969 F.2d

1319, 1323 (1st Cir. 1992) (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

6. Here, Defendants have a policy or practice of paying their employee servers subminimum hourly wages under the tip-credit provisions of the FLSA.

7. However, Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants unlawfully (1) failed to inform Plaintiff and Class Members of the tip credit pursuant to 29 U.S.C. § 203(m); (2) did not allow Plaintiff and Class Members to retain all of their tips; (3) required Plaintiff and Class Members to perform non-tipped work that was *unrelated* to Plaintiff and Class Members' tipped occupation (i.e., "dual jobs"); and (4) required Plaintiff and Class Members to perform non-tipped work that, although related to Plaintiff and Class Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek.[1]

8. Defendants' illegal practices in violation of the FLSA have resulted in a forfeiture of the "tip credit." Consequently, Defendants are liable to Plaintiff and Class Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

9. Because there are other putative plaintiffs who are similarly situated to

---

[1] Whenever the term "workweek" is used in this Complaint, it shall carry the meaning assigned to it in *29 C.F.R. 778.105* ("a fixed and regularly recurring period of 168 hours – seven consecutive 24-hour periods. It need not coincide with the calendar week but can begin on any day and at any hour of the day.")

4

Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of herself and all others similarly situated.

## II. PARTIES

10. Plaintiff, Lori Morgan, is an individual who was employed by Defendants within the three-year period preceding the filing of this lawsuit. At all relevant times, Lori Morgan was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action, as indicated by her notice of consent, which is being filed along with this Complaint as "*Exhibit A.*"

11. Putative Class Members are all of Defendants' current and former servers and bartenders who worked at Defendants' restaurant at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage ("Class Members"). Class Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

12. At all times hereinafter mentioned, Plaintiff and Class Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

13. Defendant Chef Blythe's Southern Bistro, Inc. ("CBSB"), is a corporation created under the laws of Texas and authorized to do business in the State of Texas. CBSB is engaged in operating a restaurant establishment in Texas, which provides

5

dining to paying customers, including out-of-state travelers. CBSB can be served with process by serving its registered agent, Chris Bridges.

14. Defendant, Willard Bridges, an individual, is an owner and President of Defendant CBSB. Bridges is individually liable as an "employer" as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d). Bridges acts directly or indirectly in the interest of Defendant CBSB in relation to its employees by making operational and strategic decisions affecting employees, including decisions affecting employee compensation and permitting employees to work at CBSB's restaurant.

### III. JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this matter, which arises primarily under federal law. Specifically, this Complaint asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Further, the Texas common law claims asserted in this matter form part of the same case or controversy under Article III of the United States Constitution. As such, this Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

16. This Court has personal jurisdiction over all the Defendants because Defendants reside in Texas, are doing business in Texas, and employing Texas residents such as Plaintiff and Class Members to work at Defendants' Texas business location.

17. Venue is proper in the Northern District of Texas under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## IV. COVERAGE UNDER THE FLSA

18. At all relevant times, Defendants have each, individually and jointly, been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all relevant times, Defendants have each, individually and jointly, acted, directly or indirectly, in the interest of an employer with respect to Plaintiff and Class Members.

20. Specifically, Defendant Bridges, through his role as an owner and President of CBSB, controls the day-to-day decisions of the restaurant by making strategic, operational and policy decisions, and exerting operational control over CBSB. Moreover, Bridges signs and approves Plaintiff and Class Members' paychecks. In effect, Bridges, as an owner and the President of CBSB, has held CBSB's purse-strings and guided its policies. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (finding owner of business individually liable where "[h]e has held their purse-strings and guided their policies."). Therefore, Bridges is individually liable as an employer as defined in Section 203(d) of the FLSA, 29 U.S.C. § 203(d).

21. At all relevant times, Defendants have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related

7

activities for a common business purpose – namely, operating a restaurant. Plaintiff and Class Members were employed by Defendants to work as servers at Defendants' restaurant.

22.     At all relevant times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

23.     At all relevant times, Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326 - 329 (5th Cir. 1993).

24.     As part of their employment, Plaintiff and Class Members handled food and other food service items that traveled in interstate commerce, served customers who were traveling from out-of-state or across interstate lines, or processed interstate credit card transactions.

## V.   FACTS

25.   Defendants are engaged in operating a operate a restaurant.

26.   Defendants are engaged in interstate commerce in that they are in the business of providing goods and services to customers that are moving in interstate commerce.

27.   Upon information and belief, Defendant CBSB had gross receipts in excess of $500,000 for the year 2015.

28.   Upon information and belief, Defendant CBSB had gross receipts in excess of $500,000 for the year 2016.

29.   Upon information and belief, Defendant CBSB had gross receipts in excess of $500,000 for the year 2017.

30.   Upon information and belief, Defendant CBSB had gross receipts in excess of $500,000, cumulatively, encompassing the four (4) quarters preceding the filing of this lawsuit.

31.   During the three-year period preceding the filing of this lawsuit, Defendants employed Plaintiff and Class Members as servers and paid them a subminimum hourly wage prior to accounting for the receipt of earned tips.

32.   During their employment with Defendants, Plaintiff and Class Members handled and sold food and beverages that had been moved in interstate commerce as defined by 29 U.S.C. § 203(b). Plaintiff and Class Members regularly handled credit card transactions involving institutions located outside the state of Texas.

33. At all times relevant, Plaintiff and Class Members were Defendants' "employees" as that term is defined by the FLSA and relevant case law. *See e.g.*, *Reich*, 998 F.2d at 327.

34. As part of the payment scheme that Defendants used to pay Plaintiff and Class Members, Defendants paid Plaintiff and Class Members a subminimum wage and purported to utilize the tip credit against the payment of the full minimum wage. The use of the tip credit results in huge savings to Defendants because Defendants pay Plaintiff and Class Members less than minimum wage in direct wages per hour – prior to accounting for the receipt of tips that Plaintiff and Class Members were paid by customers.

35. Defendants paid Plaintiff and Class Members a subminimum hourly rate of pay to work as servers. Defendants purported to rely on tips generated from customers to supplement Plaintiff and Class Members' subminimum hourly wage.

36. However, Plaintiff and the Class Members have been victimized by Defendants' payment scheme that violates the FLSA in that Defendants required Plaintiffs and Class Members to participate in an illegal tip pool. Specifically, Defendants required Plaintiff and Class Members to participate in a tip pool of which a portion of the pool was distributed to employees who may not lawfully participate in a mandatory tip pool, violating "condition two" of 29 U.S.C. § 203(m).

37. For example, Defendants required Plaintiff and Class Members to contribute a portion of their tips to a tip pool. Upon information and belief, a portion of the tips that Plaintiff and Class Members contributed to Defendants' tip pool were

distributed to the owners and managers of CBSB. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'")

38. Because Defendants required Plaintiff and Class Members' to share tips with other employees who do not customarily receive tips, Defendants failed to adhere to 29 U.S.C. § 203(m) and have thus violated the minimum wage as cited in 29 U.S.C. § 206. Defendants are disavowed from using the tip-credit as a defense to the payment of the full minimum wage.

39. Moreover, Defendants did not inform Plaintiff and Class Members of the provisions of the tip credit, violating *condition one* of 29 U.S.C. § 203(m). *See* 29 C.F.R. § 531.59(b).

   a. Defendants did not inform Plaintiff and Class Members of the amount of the tips to be credited toward the minimum wage. *See Id.*

   b. Defendants did not inform Plaintiff and Class Members that all tips received by the employee must be retained by the employee. *See Id.*

   c. Defendants did not inform Plaintiff and Class Members that the tip credit shall not apply to any employee who has not been informed by the employer of the provisions for a tip credit. *See Id.*

   d. Defendants did not inform Plaintiff and Class Members that the tip credit may only be taken as to the amount of the tips actually received

by the employee and that the employer may not retain any of the employee's tips. *See* Id.

40. Defendants also regularly and frequently required Plaintiff and Class Members to perform a number of non-tipped duties unrelated to their tipped occupations, including but not limited to: sweeping floors, cleaning and washing dishes, preparing food in the kitchen, and other back-of-the-house tasks unrelated to Plaintiff and Class Members' tipped occupation.

41. Moreover, Defendants regularly and frequently required Plaintiff and Class Members to perform a number of non-tipped duties related to their tipped occupation, including but not limited to: wiping down tables, setting tables, busing tables, and other "side-work." These non-tipped duties related to Plaintiff and Class Members' tipped occupation exceeded twenty percent (20%) of their time worked during each workweek.

42. Defendants paid Plaintiff and Class Members a sub-minimum wage for all hours that Plaintiff worked for Defendants, including the periods during which Plaintiff was performing nontipped duties.

43. Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

44. Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was willful and was not based on good-faith or reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations

applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

45. During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff.

### VI.   COLLECTIVE ACTION ALLEGATIONS

46. The foregoing paragraphs are fully incorporated herein.

47. Plaintiff (the "Collective Action Representatives") brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action"). In addition to the claims of the individually named Plaintiff, Plaintiff brings this action as a representative of all similarly-situated former and current employees of Defendants. The proposed collective of similarly situated employees ("Class Members") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All servers who worked for Chef Blythe's Southern Bistro within the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter and were paid a direct cash wage of less than minimum wage.**

48. FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

49. Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying employees in violation of the FLSA. Plaintiff is aware of other employees at Defendants' restaurant who were paid in the same unlawful manner as Plaintiff. Plaintiff is aware that the illegal practices or policies of Defendants have been uniformly imposed on the Class Members.

50. Plaintiff and the Class Members have the same pay structure, have the same job duties, and were also required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants. Plaintiff and Class Members are all victims of Defendants' unlawful compensation scheme.

51. Plaintiff and the Class Members are all non-exempt for purposes of minimum wage payments under the FLSA.

52. Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members. Plaintiff's experience in regard to pay is typical of the experiences of the Class Members.

53. Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The Class Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiff and Class Members.

### VII. COUNT I: MINIMUM WAGE VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT

54. The foregoing paragraphs are fully incorporated herein.

55. Defendants' failure to pay Plaintiff and Class Members at the minimum wage rate is a violation of the FLSA's minimum wage requirement. *See* 26 U.S.C. § 206.

56. During the relevant period, Defendants have violated and are violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiff and Class Members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay such employees at the minimum wage rate.

57. Defendants failed and/or refused to pay Plaintiff and Class Members the full minimum wage according to the provisions of the FLSA for each and every hour and workweek that Plaintiff and the Collective Members worked for Defendants during the statutory time period, for the duration of their employment, in violation of 29 U.S.C. § 206(a).

58. At all times relevant, Defendants compensated Plaintiff and Class Members less than the federally mandated minimum wage of $7.25 per hour. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants, Plaintiff, or Class Members.

### VIII. COUNT II: MONIES HAD AND RECEIVED UNDER THE COMMON LAW OF TEXAS

59. By requiring Plaintiff and Class Members to share their tips with Defendants, Defendants obtained money which in equity and good conscience belongs to Named Plaintiff and the Class Members. *See H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.) (*citing Staats v. Miller*, 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951)) ("Money had and received is an equitable

action that may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another.").

60. Defendants obtained Named Plaintiff and Class Members' tips maliciously.

## IX.   DAMAGES SOUGHT

61. The foregoing paragraphs are fully incorporated herein.

62. Plaintiff and Class Members are entitled to recover compensation for each and every hour worked at the federally mandated minimum wage rate.

63. Plaintiff and Class Members are entitled to all of the misappropriated funds, including remittance of the full amount of the tips Defendants received from customers, which were for the benefit of Plaintiff and Class Members.

64. Plaintiff and Class Members are entitled to reimbursement of funds that were contributed to the illegal tip pool.

65. Plaintiff and Class Members are also entitled to an amount equal to all of the unpaid wages (including all of their misappropriated tips) as liquidated damages because Defendants' actions were not based upon good-faith. *See* 29 U.S.C. § 216(b).

66. Plaintiff and Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

## X.   PRAYER

67. Plaintiff and Class Members pray for judgment against Defendants, jointly and severally, as follows:

A. For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including misappropriated tips) due to Plaintiff (and those who may join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips) due to Plaintiff (and those who may join in the suit);

B. For an order awarding Plaintiff (and those who may join in the suit) an amount of pre-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

C. For an order awarding Plaintiff (and those who may join in the suit) attorneys' fees;

D. For an order awarding Plaintiff (and those who may join in the suit) the costs of this action; and

E. For an order granting such other and further relief as this Court deems just and appropriate.

Respectfully Submitted,

By: */s/ Drew N. Herrmann*
Drew N. Herrmann
Texas Bar No. 24086523
drew@herrmannlaw.com
Pamela G. Herrmann
Texas Bar No. 24104030
pamela@herrmannlaw.com

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
Phone: 817-479-9229
Fax: 817-887-1878
ATTORNEYS FOR PLAINTIFF
AND CLASS MEMBERS